IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION


| | |
|---|---|
| LORI B.,[1] | Case No. 6:24-cv-01549-HL |
|     Plaintiff, | **OPINION AND ORDER** |
| v. | |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | |
|     Defendant. | |

_____

HALLMAN, United States Magistrate Judge:

    Plaintiff Lori B. brings this action under the Social Security Act (the "Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied Plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401 et seq. The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405. For the following reasons, the decision of the Commissioner is AFFIRMED.

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name for non-governmental parties and their immediate family members.

PAGE 1 – OPINION AND ORDER

**STANDARD OF REVIEW**

42 U.S.C. § 405(g) provides for judicial review of the Social Security Administration's disability determinations: "The court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

**BACKGROUND**

**I.     Plaintiff's Application**

Plaintiff alleges disability based on hypertension, coronary artery disease, irritable bowel syndrome, major depressive disorder, generalized anxiety disorder, and a heart attack.[2] Tr. 62. At

---

[2] Citations to "Tr." are to the Administrative Record. ECF 10.

the time of Plaintiff's amended alleged onset date, she was 52 years old. Tr. 23. Plaintiff has a high school education. *Id.* She has past relevant work as a cashier. *Id.*

Plaintiff protectively applied for DIB on July 7, 2021, alleging an initial alleged onset date of July 10, 2019. Tr. 62. Her application was denied initially on April 26, 2022, and on reconsideration on September 13, 2022. Tr. 68-69, 77-78. Plaintiff subsequently requested a hearing, which was held on October 25, 2023, before Administrative Law Judge ("ALJ") Carla Suffi. Tr. 29. Plaintiff appeared and testified at the hearing, represented by counsel. Tr. 29-60. With the assistance of counsel, Plaintiff amended her alleged onset date to April 20, 2020. Tr. 35. On November 9, 2023, ALJ Suffi issued a decision denying Plaintiff's claim. Tr. 24. Plaintiff requested Appeals Council review, which was denied on July 29, 2024. Tr. 1-6. Plaintiff then sought review before this Court.

## II.     Sequential Disability Process

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. At step one, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c) & 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n. 5.

Finally, at step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## III.    The ALJ's Decision

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 20, 2020, her amended alleged onset date. Tr. 17.

At step two, the ALJ determined that Plaintiff has the following severe impairments: "obesity; hypertension; coronary artery disease[;] status post inferior ST elevation myocardial

infarction ("STEMI") with stenting; chronic obstructive pulmonary disease ("COPD"); anxiety disorder; major depressive disorder; methamphetamine-induced psychotic disorder; and substance use disorder (methamphetamine)[.]" *Id.*

At step three, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 18. The ALJ then resolved that Plaintiff had the RFC to do medium work with the following limitations:

> [She can] frequently stoop, kneel, crouch, crawl, and climb ramps or stairs; never climb ladders, ropes, or scaffolds; never perform work tasks in temperature extremes; never work in an environment with exposure to concentrated pulmonary irritants, such as dusts, fumes, odors, and gases; never perform work tasks involving exposure to extraordinary hazards such as unprotected heights or dangerous, unguarded moving mechanical parts that can engage the body; can sustain the attention and concentration to carry out and adapt to the demands of simple, repetitive, routine work tasks and simple work related decision making; can never perform work tasks that require contact with the general public and can work in proximity to coworkers but never on joint or tandem work.

Tr. 19.

At step four, the ALJ found that Plaintiff could not perform any past relevant work. Tr. 23.

But at step five—considering Plaintiff's age, education, work experience, and RFC—the ALJ found that a significant number of jobs existed in the national economy that Plaintiff could perform, including work as a kitchen helper, hospital cleaner, and cook helper. Tr. 23-24. Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 24

## DISCUSSION

Plaintiff argues that the ALJ erred by failing to resolve conflicts between the vocational experts's ("VE") testimony and information in the *Dictionary of Occupational Titles* ("DOT"), as required by Social Security Ruling (SSR) 00-4p. *See* SSR-00-4p, 2000 WL 1898704, at *2. In particular, Plaintiff argues that, (1) being a kitchen helper or cook helper requires frequent

exposure to "extreme heat/cold and other environmental conditions," contrary to the limitation in her RFC that she can "never perform work tasks in temperature extremes[,]" and (2) the job of a hospital cleaner involves "frequent exposure to wetness and humidity" and occasional climbing which is contrary to the limitations in her RFC that she can "never climb ladders, ropes, or scaffolds." Pl.'s Opening Br. 4 (quoting Tr. 19).

In response, the Commissioner concedes that there is "an unresolved apparent conflict with the kitchen helper and cook helper occupations, with regard to Plaintiff's RFC limitation that she can never perform work tasks in temperature extremes." Def.'s Br. 2. However, the Commissioner argues that there is no apparent conflict between the DOT and the VE testimony regarding the hospital cleaner job. The Commissioner further argues that because the hospital cleaner job consists of about 35,000 jobs in the national economy, the ALJ's error regarding the kitchen helper and cook helper jobs was harmless. *Id.* at 3 (citing *Gutierrez v. Comm'r*, 740 F.3d 519, 527-29 (9th Cir. 2014)).

The Court agrees that the ALJ's error was harmless. Accordingly, the Court affirms the Commissioner's decision denying Plaintiff's claim.

I.   **Step Five Finding**

   A.   **Applicable Law**

An individual is disabled if her impairments prevent her from not only doing her past relevant work, but also any work that "exists in significant numbers" in the national economy. 42 U.S.C. § 423(d)(2)(A). The Ninth Circuit has consistently held that 25,000 jobs available in several regions throughout the country meets the "significant numbers" threshold. *Gutierrez*, 740 F.3d at 528-29. Errors at step five are harmless if the ALJ identifies a significant number of jobs that fit within a claimant's limitations. *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999). An ALJ's decision may not be reversed on account of a harmless error. *Molina v. Astrue*, 674 F.3d

1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r of Soc. Sec.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006)).

An ALJ has the burden of providing substantial evidence at step five, which they can fulfill using VE testimony. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). The ALJ also "relies primarily on the DOT for information about the requirements of work in the national economy." *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007) (quotation marks omitted). A VE's "recognized expertise provides the necessary foundation for his or her testimony." *See Ford*, 950 F.3d at 1158 (9th Cir. 2020).

Under SSR-00-4p, VE testimony "should be consistent with the occupational information supplied by the DOT." Soc. Sec. Reg. ("SSR") 00–4p, *available at* 2000 WL 1898704, at *2. The ALJ is "required to investigate and resolve any apparent conflict between the VE's testimony and the DOT." *Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017). Before resolving a conflict between the VE's testimony and the DOT, "the ALJ must first determine whether a conflict exists" at all. *Id.* The ALJ is not required to resolve every speculative potential conflict. The duty to resolve a conflict exists only when the conflict between the VE's testimony and the DOT is "obvious or apparent[.]" *Gutierrez*, 844 F.3d at 808. This means that the testimony must be at odds with the [DOT's] listing of job requirements that are essential, integral, or expected." *Id.* Additionally, if the "job itself is a familiar one—like cashiering—less scrutiny by the ALJ is required." *Id.*

**B.    Analysis**

When formulating Plaintiff's RFC, the ALJ determined that Plaintiff could "never climb ladders, ropes[,] or scaffolds" and "never perform tasks in temperature extremes." Tr. 19. The ALJ relied on VE testimony that Plaintiff could perform the job of hospital cleaner because it

was consistent with the restrictions and limitations in her RFC. *See* Tr. 56; DOT No. 323.687-010, 1991 WL 672782 (hospital cleaner). When the ALJ was questioning the VE at the hearing, the ALJ posed the following hypothetical:

> an individual closely approaching advanced age, previously -- now advanced age, with a high school education, past work such as [Plaintiff], with the residual functional capacity to perform work at the medium level, subject to no more than frequent stooping, kneeling, crouching, crawling, and climbing of ramps and stairs. Never climbing ladders, ropes, or scaffolds, never work tasks in temperature extremes, never work in environments with exposure to concentrated pulmonary irritants such as dust, fumes, odors, and gases, never work tasks involving exposure to extraordinary hazards such as unprotected heights and dangerous unguarded moving mechanical parts that could engage the body. Can sustain the attention and concentration to carry out and adapt to the demands of simple routine repetitive work tasks and simple work-related decision-making, can never perform work tasks that require contact with the general public, can work in proximity to coworkers, but never unjoined or tandem work tasks.

Tr. 55. The VE responded with several jobs consistent with this hypothetical including the hospital cleaner job. The ALJ asked the VE multiple times if the VE's testimony was consistent with the DOT, to which the VE responded affirmatively. Tr. 55-57.

Plaintiff assigns error to the ALJ's decision with respect to two alleged conflicts between the VE's testimony and the DOT regarding the hospital cleaner job. First, Plaintiff argues that the ALJ limited Plaintiff to never perform work in temperature extremes, but the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles ("SCO") describes the environmental conditions of hospital cleaner as involving frequent wetness and humidity. *See* DOT No. 323.687-010, 1991 WL 672782 (hospital cleaner). Second, Plaintiff argues that the ALJ limited her to frequently climbing ramps or stairs and never climbing ladders, ropes, or scaffolds, but the SCO describes the postural requirements of the hospital cleaner job as involving occasional climbing. Pl.'s Opening Br. 4-5.

PAGE 8 – OPINION AND ORDER

Here, there was no "obvious or apparent" conflicts between the VE's testimony and the DOT, so there was nothing for the ALJ to resolve. Regarding Plaintiff's first argument, the ALJ did not find that the record supported limitations involving wetness or humidity. Tr. 19. Furthermore, Plaintiff has not argued that the record supports such a limitation and has therefore waived this issue. *See Greenwood v. F.A.A.*, 28 F.3d 971, 977 (9th Cir. 1994) ("We review only issues which are argued specifically and distinctly in a party's opening brief").

Regarding Plaintiff's second argument, the DOT does not state that the hospital cleaner job would require Plaintiff to climb ladders, ropes, or scaffolds. *See* DOT No. 323.687-010, 1991 WL 672782 (hospital cleaner). Although the DOT indicates that some type of climbing is occasionally required for the hospital cleaner job, the SCO does not distinguish the type of climbing involved for any occupation. Rather, as the Commissioner contends, the SCO combines all types of climbing including climbing on ladders, stairs, ramps, poles, scaffolding, and other devices into one non-exertional category. Def.'s Br. 5 (citing SCO, App'x C, available at http://ssaconnect.com/tfiles/SCO-Appendicies.pdf (last visited July 11, 2025). Like Plaintiff's case, in *Maxwell v. Saul*, the Ninth Circuit found there was no conflict between the claimant's inability to climb ladders, ropes, or scaffolds and a DOT job description that required occasional climbing. 840 F. App'x. 896, 898 (9th Cir. 2020). The claimant in *Maxwell* was restricted to never climb ladders, ropes or scaffolds, but could occasionally climb ramps and stairs. *Id.* The Court in *Maxwell* explained that while the order picker job "does involve occasional climbing, the DOT does not state that the [order] pickers must climb ladders, ropes, or scaffolds; they may also be climbing stairs or ramps, for instance, which is not prohibited by [Plaintiff's] RFC. *Id. (citing Gutierrez*, 844 F.3d at 808) (accepting the VE's testimony as substantial evidence that plaintiff, who could not reach overhead, could work as a cashier even though the DOT listed

PAGE 9 – OPINION AND ORDER

"frequent reaching" as a requirement for the job, "[g]iven how uncommon it is for most cashiers to have to reach overhead").

Here, Plaintiff has not shown that the integral tasks done in the hospital cleaner position require climbing ladders, ropes, or scaffolds, as opposed to ramps or stairs, which she could occasionally perform. Additionally, Plaintiff needing to climb ladders, ropes, or scaffolds is not a likely or foreseeable task required in the hospital cleaner role, therefore the ALJ did not have an obvious or apparent conflict to resolve. *See Gutierrez*, 844 F.3d at 808. Accordingly, there was no conflict between the DOT and the VE's testimony that Plaintiff could work as a hospital cleaner, even though the DOT includes climbing occasionally as a possible task. The ALJ appropriately relied on the VE's testimony at step five.

## CONCLUSION

Based on the foregoing, pursuant to 42 U.S.C. § 405(g), sentence four, the Court AFFIRMS the Commissioner's decision.

IT IS SO ORDERED.

DATED this 31st day of July, 2025.

_____
ANDREW HALLMAN
United States Magistrate Judge